Peter Boatsman and Bertha Boatsman v. Commissioner.
Boatsman v. Commissioner
Docket No. 48595.
United States Tax Court
T.C. Memo 1957-93; 1957 Tax Ct. Memo LEXIS 161; 16 T.C.M. (CCH) 385; T.C.M. (RIA) 57093; May 31, 1957
Peter Boatsman, 51 Fourteenth Street, Fond du Lac, Wis., for the petitioners. Lee C. Smith, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax and additions to tax for negligence, under section 293(a) of the Internal Revenue Code of 1939, against the petitioners as follows: Addition to
Tax under
Year
Deficiency
Sec. 293(a)
1945
$ 630.00
$31.50
1946
1,633.41
81.67
1947
188.00
9.40
1948
656.88
32.84
1949
387.00
19.35
*162 The questions for decision are whether (1) any of the deficiencies for the years 1945, 1946, 1947 and 1948 are barred by the statute of limitations upon assessment and collection set forth in section 275 of the Internal Revenue Code of 1939; (2) the respondent was justified in increasing the petitioners' income for each of the taxable years in question, and determining deficiencies based thereon; and (3) the respondent was correct in determining additions to tax for each of the taxable years for negligence, under section 293(a). Findings of Fact Petitioners are husband and wife, and resided in Fond du Lac, Wisconsin, during the years in question. They filed joint income tax returns for the taxable years 1945 to 1949, inclusive, with the collector of internal revenue for the district of Wisconsin. Peter Boatsman, sometimes referred to herein as petitioner, a chiropractor and naturopath, has practiced his profession since 1916, and was so engaged in Fond du Lac during all of the taxable years herein. During the years 1916 to 1936 petitioner practiced his profession in the following cities: Mezonomie, Wisconsin; Midway, Minnesota; Princeton, Minnesota; Glenwood City, Wisconsin; *163 Mauston, Wisconsin; Port Washington, Wisconsin; and Columbus, Wisconsin. In the fall of 1936, petitioner closed his office and went to Florida, where he remained until May of 1937, at which time he left Florida on a visit to Latvia in Europe. During his stay in Latvia he met his wife-to-be, marrying her on August 15, 1937, three weeks after he had met her. In consideration of the marriage, petitioner gave his wife $1,000 to be used for her child by a former marriage and her mother whom she was supporting, and promised to give her an additional $14,000 on her arrival in the United States. The $1,000 was left with the mother. Petitioner and his wife returned to the United States in November of 1937, and shortly thereafter he gave his wife $14,000 in cash, a part of the savings he had accumulated prior to his trip to Florida in 1936. After giving the said $14,000 to his wife, petitioner had no more than $5,000 of his savings remaining. Later in 1937, he resumed his practice, in this instance, in Beaver Dam, Wisconsin. The petitioners moved to New Holstein, Wisconsin, in March of 1938, and thence to Fond du Lac in September of 1940, where they remained until 1953, at which time they *164 moved to Florida. As reported on their returns for 1945 through 1949, petitioners' net income from rents, dividends, professional practice, capital gains and miscellaneous items, but without any allowance for capital losses sustained, was as follows: Professional
Capital
Year
Rents
Dividends
Practice
Gains
Misc.
Total
1945
$385.60
$1,227.97
$298.58
$1,912.15
1946
302.34
1,083.81
922.22
2,308.37
1947
490.70 [1]
$150.00
996.95
(loss)
1,637.65
1948
422.65 [1]
219.98
1,361.93
(loss)
2,004.56
1949
411.30 [1]
321.91
1,255.91
(loss)
$414.96
2,404.08
Petitioner filed a nontaxable income tax return for the year 1920, and paid a tax of $12.07 and $4.98 for the years 1921 and 1922, respectively. For the years 1923 and 1924, nontaxable returns were filed, and no returns were filed for the years 1925 through 1934. Nontaxable returns were filed for the years 1935 and 1936, *165 but a total tax of $70.90 was ultimately paid for the year 1936. No returns were filed for the years 1937 and 1938. A tax of $2.84 paid by petitioner for the year 1939 was refunded, and nontaxable returns were filed for 1940 and 1941, but a tax of $6.09 was assessed and paid for 1941. Total taxes of $1.70, $34.02 and $62 were paid for the years 1942, 1943 and 1944, respectively. During the period 1937 through 1944 petitioners earned no more than they required for normal living expenses. During the same period they purchased the following assets: Asset
Purchase Price
Frame Bungalow
$ 3,207.09
Residence
6,516.73
Duplex
3,923.32
Automobile
1,275.00
Bond
50.00
Total
$14,973.14
As of January 1, 1945, the houses were subject to mortgages totaling $2,600, indicating that the petitioners expended $12,373.14 from 1937 through 1944. Aside from any transfers of money between themselves, the petitioners at no time received any money through gift or inheritance. The funds expended for the above-noted purchases were derived from petitioner's pre-1937 savings. Additional expenditures were made from the said savings for repairs on the houses. On January 1, 1945, the *166 opening date of the net worth computation, the petitioners had $4,000 in cash remaining from the pre-1937 accumulated savings. Petitioner in 1946 used the $4,000 in accumulated savings to speculate in the stock market. Petitioner's books and records were inadequate for the purpose of determining his tax liability for the years in question. The respondent determined deficiencies based on the following net worth computations, which, except for cash claimed as brought forward from prior years and the differences in adjusted gross income which would result from opening cash as claimed, are conceded by the petitioners to be correct: Description
12/31/44
12/31/45
12/31/46
ASSETS: Cash on Hand
[1]
[1]
[1]
Cash in Bank
Checking Account
$ 87.43
$ 1,180.01
$ 1,001.24
Savings Account (Mrs. Boats-
man)
Real Estate
51 14th Street
6,516.73
6,516.73
6,516.73
499 South Marr Street
3,207.09
(sold)
18 South Gould Street
3,923.32
3,923.32
(sold)
124 East 13th Street
3,400.00
(sold)
62 West 12th Street
4,071.15
4,071.15
Automobile
1,275.00
1,275.00
1,275.00
Securities
Bond
50.00
50.00
50.00
Stocks and Options
12,222.47
Brokerage Accounts
Thomson and McKinnon
Bache and Company
Commodity Credit
Office Equipment
500.00
500.00
500.00
TOTAL ASSETS
$15,559.57
$20,916.21
$25,636.59
LIABILITIES: Mortgages Payable
$ 2,600.00
$ 3,800.00
Depreciation Reserves
183.35
302.02
193.76
TOTAL LIABILITIES
$ 2,783.35
$ 4,102.02
$ 193.76
NET WORTH
$12,776.22
$16,814.19
$25,442.83
Increase of Worth
4,037.97
8,628.64
Personal Expenditures
1,087.25
1,744.11
Capital Gain Adjustment
( 298.58)
( 955.52)
Unallowable Loss
Capital Loss Carry-Over
ADJUSTED GROSS INCOME
$ 4,826.64
$ 9,417.23
*167 Description
12/31/47
12/31/48
12/31/49
ASSETS: Cash on Hand
[1]
[1]
[1]
Cash in Bank
Checking Account
$ 489.83
$ 312.38
$ 622.66
Savings Account (Mrs. Boats-
man)
270.00
302.81
1,250.00
Real Estate
51 14th Street
6,516.73
6,516.73
6,516.73
499 South Marr Street
18 South Gould Street
124 East 13th Street
62 West 12th Street
4,071.15
4,071.15
4,071.15
Automobile
1,275.00
1,275.00
1,275.00
Securities
Bond
50.00
50.00
50.00
Stocks and Options
3,277.23
7,882.11
13,591.90
Brokerage Accounts
Thomson and McKinnon
658.92
Bache and Company
97.22
17.16
(2,845.19)
Commodity Credit
947.50
Office Equipment
500.00
500.00
500.00
TOTAL ASSETS
$17,206.08
$21,874.84
$25,032.25
LIABILITIES: Mortgages Payable
Depreciation Reserves
304.49
415.22
525.95
TOTAL LIABILITIES
$ 304.49
$ 415.22
$ 525.95
NET WORTH
$16,901.59
$21,459.62
$24,506.30
Increase of Worth
(8,541.24)
4,558.03
3,046.68
Personal Expenditures
1,744.00
1,352.48
1,335.49
Capital Gain Adjustment
Unallowable Loss
9,001.04
248.29
Capital Loss Carry-Over
( 428.65)
( 440.77)
ADJUSTED GROSS INCOME
$ 2,203.80
$ 5,730.15
$ 3,941.40
*168 The gross income and adjusted gross income as reported by petitioners, the adjusted gross income as determined by respondent and the amounts by which adjusted gross income as so determined exceeded adjusted gross income as reported are, for the years in question, as follows: Excess of Adjusted
Adjusted
Net Worth
Gross Income
Determined over
Gross Income
Adjusted Gross
Computed by
Adjusted Net
Year
Reported
Income Reported
Respondent
Worth Reported
1945
$4,180.58
$1,912.15
$4,826.64
$2,914.49
1946
4,304.82
2,308.37
9,417.23
7,108.86
1947
3,165.00
1,100.00
2,203.80
1,103.80
1948
4,054.43
1,324.00
5,730.15
4,406.15
1949
3,847.87
1,291.78
3,941.40
2,649.62
For the years 1945 and 1946 petitioner actually incurred and paid expenses in practicing his profession as claimed in the joint returns filed for those years. The amounts so claimed were $1,219.03 for 1945 and $1,146.19 for 1946. On February 13, 1951, petitioner executed waivers extending the period during which assessments might be made for the taxable years 1945 and 1947 to June 30, 1952. On May 7, 1952, this *169 period was further extended to June 30, 1953. On January 14, 1952, petitioners executed similar waivers for the taxable years 1946 and 1948 extending the period during which assessments might be made to June 30, 1953. The notice of deficiencies for the years in question was mailed to petitioners on February 25, 1953. In reporting their income for each of the years 1945 and 1946, petitioners omitted from gross income an amount properly includible therein which was in excess of 25 per centum of the gross income reported in the return. Opinion Respondent, on the basis of a net worth computation, determined deficiencies in income tax and additions to tax for negligence against petitioners for the years 1945 through 1949. Petitioners testified that they had at least $14,500 in cash on hand at the beginning of the period in controversy, which amount the respondent ignored in his net worth computation. Except for opening cash, the petitioners have conceded the correctness of respondent's net worth determinations, and in that connection it is to be noted that an acceptance of the claim of $14,500 as the amount of cash on hand at January 1, 1945, would still not account for or *170 explain $3,682.92 of the net worth increases as determined by the respondent. Furthermore, there are other respects in which this claim not only fails to find support, but is refuted of record. We are persuaded by the evidence that petitioners did have as much as $4,000 in cash on hand at January 1, 1945, and have made a finding to that effect. Also on the evidence, including the testimony of petitioners, we are satisfied that the said $4,000 was expended in 1946 in the stock speculations of petitioner, and effect should be given thereto in the recomputations hereunder. For the other years, the record supports the respondent's determinations. Petitioner testified at the trial that in 1936 he had $22,000 in cash savings which he had been accumulating since 1916. He further testified that when he left for a trip of nearly one year's duration to Florida and Europe, he left this cash hidden in a box of professional books, with a casual acquaintance, who was not told of the presence of the money. He also testified that the name of this acquaintance was Smith, but upon examination of a letter supplied by counsel for the respondent, stated that Miller was the name. His testimony as to *171 the giving of $14,000 to his wife upon his return from Europe is supported by his wife's testimony, but there is no corroboration for his claim that he had $8,000 in cash remaining thereafter. In fact, according to an affidavit executed by him prior to the trial, his statement was that he had $5,000 remaining after the gift or payment to his wife. While we are persuaded that petitioner did have some accumulated savings in 1937 and that he did turn over approximately $14,000 to his wife, we do not find convincing support for the proposition that he had remaining more than $5,000, as stated in the affidavit. Mrs. Boatsman testified that she had expended no more than $2,000 or $3,000 of her $14,000 prior to 1945 and that such amounts were used to make repairs on houses purchased prior thereto. She and petitioner testified that as of late 1945 or early 1946 she still had $11,000 or $12,000, which she gave to petitioner, who used it to speculate in the stock market. This testimony is inconsistent with an affidavit executed by Mrs. Boatsman prior to the trial, in which she stated that all but $500 of her $14,000 was spent in the purchase and repair of a residence and four rental houses. *172 The Court, on the basis of the income reported in the returns filed by petitioners during the years 1937 through 1944, their normal living expenses as revealed in the stipulated net worth statement and the fact that they resided, and petitioner undertook to establish a practice of his profession in three different localities within three to five years following his return from Latvia, is convinced and has concluded and found as a fact that during 1937 through 1944, petitioners earned no more than they required to satisfy their normal personal living expenses. During this same period, however, the petitioners expended $12,373.14 in the purchase of three houses, an automobile and a bond. The only source shown for such funds was the pre-1937 accumulated savings. While Mrs. Boatsman testified that only about $2,000 or $3,000 of her money was expended on the houses purchased, the Court believes that her affidavit stating that substantially all of her money was so utilized is closer to the truth and in all probability she was confused as to the date or dates on which she returned the money to petitioner. Petitioner alleges that he had $3,500 in silver coins at the beginning of 1945, but *173 whether or not that much of the cash on hand at that date was in silver or currency does not change the over-all amount. Under these circumstances, we have found that all but $4,000 of petitioners' cash savings was expended prior to 1945. Petitioner's testimony, supported by that of his wife, indicates that these remaining savings were not utilized until late in 1945, or early in 1946. Petitioner further testified that such sums were expended in stock speculations, which commenced in 1946. On the basis of this testimony and the fact that the stipulated net worth statement showed no stock assets prior to 1946, and a net worth increase well in excess of $4,000 for 1946, we have found that the remaining $4,000 of accumulated savings was expended in the 1946 calendar year. The respondent's determination of additions to tax for negligence, which is presumptively correct, has not been rebutted by petitioner in any way other than his general denial of tax liability. The record convinces us that the deficiencies determined are, at the very least, the result of negligence. Since more than three but less than five years elapsed between the filing dates of petitioners' 1945 and 1946 income *174 tax returns and the dates on which petitioners executed waivers for those years, they are closed to assessment, unless petitioners omitted from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of the gross income stated in the returns. [1]
*175 Petitioners reported gross income of $4,180.58 for 1945, of which 25 per centum would be $1,045.15. They reported gross income for 1946 in the amount of $4,304.82, of which 25 per centum would be $1,076.21. The parties are now agreed as to petitioners' adjusted gross income for each such year, except for such reductions as may be required as the result of our conclusions and findings as to the cash on hand at January 1, 1945. We have concluded and found that petitioner had $4,000 on hand on that date, for which no allowance has been made by the respondent in his determinations herein, but we have further determined that the $4,000 was all spent by petitioner in 1946, the year in which petitioner began speculating in the stock market. We have thus concluded, and our findings of fact show, that the petitioners' adjusted gross income for 1945 was $4,826.64, and for 1946, $5,417.23. The facts also show that petitioner actually incurred and paid expenses in the practice of his profession of $1,219.03 for 1945 and $1,146.19 for 1946, and that effect was given by the respondent in his determination to any expenses so paid during those years. In fact, it is inherent in a determination of *176 taxable income on the basis of the increase in the net worth of a taxpayer during the taxable year that all expenditures actually made by such taxpayer in such year are allowed as deductions, except those specifically shown as not allowed, such as living expenses and other nondeductible items. The addition of these amounts to adjusted gross income as herein determined indicates that the gross income of the petitioners for 1945 was at least $6,045.67, and that in reporting a gross income of $4,180.58 for that year, the petitioners understated their gross income by more than 25 per centum thereof; and further, that their gross income for 1946 was at least $6,563.42, and in reporting a gross income of $4,304.82 on their return for that year, they understated their gross income for such year by more than 25 per centum. We accordingly conclude and hold that assessment of the deficiencies for those years is not barred by the provisions of section 275(c) of the 1939 Code. For 1947 and 1948, the facts show that waivers were executed within the three year period prescribed under section 275(a) and (f) of the 1939 Code, and that the notice of deficiencies was mailed within the period prescribed *177 by such waivers or proper extensions thereof. It thus appears that assessment of the deficiencies for those years is not barred by the statute. As to the year 1949, there is no statute of limitations issue. Decision will be entered under Rule 50. Footnotes
1. Although these are the amounts entered as net rents on the returns, they should have been $310.70, $243 and $401.30, respectively, if the amounts entered as gross rents, depreciation, repairs and other expenses were correctly stated.↩
1. Items not agreed to by petitioner.↩
1. Internal Revenue Code of 1939 - SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. * * *
(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day.↩